UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.<br><br>    *Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    *Defendant.* | Case No. 1:21-cv-01216-RCL |

## MEMORANDUM OPINION

This case arises out of a Freedom of Information Act ("FOIA") request that plaintiff Judicial Watch, Inc. ("Judicial Watch") submitted to the Federal Bureau of Investigation ("FBI"), a component of the defendant U.S. Department of Justice ("DOJ"). Judicial Watch requested communications between the FBI and financial institutions about the violent attack at the United States Capitol on January 6, 2021 ("January 6"). The FBI issued a Glomar response,[1] which allows the government to avoid confirming the existence of certain records when confirmation of those records would implicate an exemption to FOIA's disclosure requirements. Subsequently, Judicial Watch sued the DOJ for failing to turn over these purported records. *See* Pl.'s Compl., ECF No. 1. DOJ asserts that all FOIA obligations have been met and seeks summary judgment. *See* Def.'s Mot., ECF No. 10; Def.'s Mem. in Supp. ("Def.'s Mem."), ECF No. 10-1. Judicial Watch argues that it is entitled to summary judgment in its favor. *See* Pl.'s Opp'n., ECF No. 15; Pl.'s Cross-Mot., ECF No. 16. After reviewing the parties' motions, applicable law, and the record as a whole,

---

[1] The phrase "Glomar response" refers to the facts of *Phillippi v. C.I.A.*, 546 F.2d 1009 (D.C. Cir. 1976). There, the CIA refused to confirm or deny whether it had any records related to a ship—the Glomar Explorer. The phrase "Glomar response" is now well-entrenched in FOIA precedent. *See Am. C.L. Union v. C.I.A.*, 710 F.3d 422, 426 n.1 (D.C. Cir. 2013).

the Court will **GRANT** the DOJ's motion for summary judgment and **DENY** Judicial Watch's cross-motion for summary judgment.

## I. BACKGROUND

Judicial Watch is a non-profit educational foundation that "regularly requests records from federal agencies" and disseminates the resulting information to the public. Pl.'s Compl. ¶ 3. As part of this mission, on February 10, 2021, Judicial Watch submitted a FOIA request to the FBI for:

> All records of communication between the FBI and any financial institution, including but not limited to Bank of America, Citibank, Chase Manhattan Bank, Discover, and/or American Express, in which the FBI sought transaction data for those financial institutions' debit and credit card account holders who made purchases in Washington, D.C., Maryland and/or Virginia on January 5, 2021 and/or January 6, 2021.

Pl.'s Compl. ¶ 5. In a letter dated February 19, 2021, the FBI acknowledged Judicial Watch's request and assigned it a FOIA Request Number. Seidel Decl. ¶ 7, ECF No. 10-4. In a separate letter sent the same day, the FBI invoked FOIA's 10-day extension based on "unusual circumstances." *Id.* at ¶ 8. Judicial Watch filed this lawsuit in response. *See* Pl.'s Compl.

A little more than a month after this suit was filed, the FBI sent a letter to Judicial Watch advising that the FOIA request did not comport with the requirements of 28 C.F.R. § 16-3(b). Seidel Decl. ¶ 10. The FBI took the position that Judicial Watch's "request did not provide enough detail to enable FBI personnel to search for potentially responsive records with a reasonable amount of effort." *Id.* In response, Judicial Watch emailed a news article dated February 5, 2021, from Mail Online, which provided further details supplementing Judicial Watch's FOIA request. *See id.* at ¶ 11; ECF No. 15-2. The FBI accepted this supplemental news article as narrowing the scope of Judicial Watch's FOIA request "to records of FBI communications seeking financial

2

transaction records, identified by the dates and locations specified in Plaintiff's request, as part of the investigation into the events at the Capitol on January 6, 2021." Seidel Decl. ¶ 11. Judicial Watch has not disputed that this is the scope of its request. *See* Pl.'s Opp'n 2, 9; Pl.'s Reply 4; Pl.'s Resps. to Def.'s Material Facts 2, ECF No. 16.

After narrowing the scope to the specific investigation into January 6, the FBI asserted that it could neither confirm nor deny the existence of the sought-after records—that is, issued a Glomar response. Seidel Decl. ¶¶ 12, 18, 20. The FBI explained that FOIA Exemption 7(E) applied to Judicial Watch's request because disclosure would reveal law enforcement techniques and procedures. *See id.*; 5 U.S.C. § 552(b)(7)(E).

Relying on its Glomar response and FOIA Exemption 7(E), the DOJ moved for summary judgment. Def.'s Mem. 8. Judicial Watch filed an opposition and cross-motion for summary judgment, arguing that a Glomar response under Exemption 7(E) is improper because the DOJ has officially acknowledged the use of financial records for its investigation into January 6 and that the FBI's activities are otherwise unlawful and thus unprotected. *See* Pl.'s Opp'n; Pl.'s Cross-Mot. The DOJ filed a corresponding opposition and reply. Def.'s Reply, ECF No. 17 & 18. Judicial Watch replied. Pl.'s Reply, ECF No. 19. And the DOJ filed a sur-reply. Def.'s Sur-Reply, ECF No. 20.

These motions are now ripe for this Court's review.

## II. LEGAL STANDARD

### A. Summary Judgment

FOIA requires disclosure of requested government records unless the information falls within one of its exemptions. 5 U.S.C. § 552; *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). The statute contains a "strong presumption in favor of disclosure." *Am. C.L. Union v. Dep't of*

*Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). FOIA cases are typically resolved at the summary judgment stage. *James Madison Project v. Dep't of Just.*, 302 F. Supp. 3d 12, 19 (D.D.C. 2018).

On a motion for summary judgment, a ruling for the movant is appropriate "where the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a FOIA case, the burden is on the government to prove "that it has not improperly withheld" information requested under FOIA. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 99 (D.D.C. 2019) (internal quotation marks omitted) (quoting *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019)). "This burden does not shift even when the requester files a cross-motion for summary judgment"; the Government must always demonstrate that it has properly invoked the exemption relied upon. *See id.* Summary judgment in a FOIA case may be granted in favor of an agency based on government declarations supporting invocation of a FOIA exemption, provided that they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail," (2) "demonstrate that the information withheld logically falls within the claimed exemption," and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B. Glomar Standard

A Glomar response allows agencies to refuse to confirm or deny the existence of responsive records when to answer the inquiry would cause harm cognizable under a FOIA exemption. *Am. C.L. Union*, 710 F.3d at 426 & n.1. An agency must justify its Glomar response with a detailed affidavit demonstrating that acknowledgment of "the mere existence of responsive records would

disclose exempt information." *Elec. Priv. Info. Ctr. v. N.S.A.*, 678 F.3d 926, 931 (D.C. Cir. 2012). The standard is not burdensome, and "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

### III.   DISCUSSION

Judicial Watch can challenge the DOJ's Glomar response in "two distinct but related ways." *See James Madison Project*, 302 F. Supp. 3d at 20 (quoting *Agility Pub. Warehousing Co. K.S.C. v. N.S.A.*, 113 F. Supp. 3d 313, 326 (D.D.C. 2015)).

First, Judicial Watch can overcome Glomar by demonstrating "that the agency has previously 'official[ly] acknowledged' the fact of the existence of a requested record." *See id.* (citing *Agility Pub. Warehousing*, 113 F. Supp. 3d at 326). Judicial Watch has the burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *See Am. C.L. Union*, 710 F.3d at 427. If Judicial Watch meets this burden, then "the agency can no longer use a Glomar response and therefore must either (1) disclose the record to the requester or (2) establish that its contents are exempt from disclosure and that such exemption has not been waived." *See James Madison Project*, 302 F. Supp. 3d at 20 (internal quotation marks omitted) (quoting *Moore v. C.I.A.*, 666 F.3d 1330, 1333 (D.C. Cir. 2011)).

Second, if Judicial Watch cannot establish official acknowledgment, it has an alternative avenue. It can challenge the agency's Glomar response on the merits and argue "that confirming or denying the existence of records" would not "cause harm under the FOIA exemption invoked by the agency." *See id.* Here, the exemption invoked is Exemption 7(E).

Judicial Watch takes both routes. It contends that the DOJ's Glomar response was improper because the FBI's use of financial records for investigations into January 6 has been officially acknowledged; and, in the alternative, that the FBI had no basis to invoke Exemption 7(E).

For the reasons set forth below, this Court concludes that the DOJ's Glomar response was proper and that summary judgment for the government is warranted.

### A. The Official Acknowledgment Exception is Inapplicable

The official acknowledgment exception to a Glomar response is a matter of common sense. "[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *Am. C.L. Union*, 710 F.3d at 426. A plaintiff "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007)). And the specific information involved for a Glomar response is the mere "existence (or not) of records responsive to the FOIA request." *Id.* at 427 (internal quotation marks omitted) (quoting *Marino v. D.E.A.*, 685 F.3d 1076, 1081 (D.C. Cir. 2012)).

In Judicial Watch's briefing, it identifies two primary sources of information that could constitute official acknowledgments of existing responsive records: (1) FBI agent statements in support of charges against January 6 participants, where there are references to financial records, Pl.'s Reply 2–4, and (2) the FBI's response to a FOIA request from Dan Heily, Pl.'s Opp'n 8–9. Moreover, this Court will liberally construe Judicial Watch's prior communications with the FBI to allege that the Mail Online news article it cited is an official acknowledgment. *See* Seidel Decl. ¶ 11.

The D.C. Circuit has imposed a "strict test" for claims of official acknowledgment. *See Moore*, 666 F.3d at 1333 (quoting *Wilson v. C.I.A.*, 586 F.3d 171, 186 (2d Cir. 2009)). "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Id.* (quoting *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011)). Thus, Judicial Watch must point to a specific, official, acknowledgment that the FBI collected financial records to further its investigation into January 6.

The Mail Online article is not an official acknowledgment because there is no evidence that the information in it was endorsed or otherwise supplied by the government. A plaintiff cannot meet the burden of demonstrating prior disclosure when the prior disclosure of information was made by someone other than the agency from which the information is sought. *Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir. 1999). No evidence indicates that the DOJ or FBI provided Mail Online with the information in the article. *See* Seidel Decl. ¶ 19. *Official* acknowledgment cannot be based on mere *public* speculation, even if widespread. *Wolf*, 473 F.3d at 378 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Speculation in a news article, without more, does not constitute official acknowledgment.

Second, the submitted statements by FBI agents in specific January 6 cases do not constitute an official acknowledgment. As the D.C. Circuit has repeatedly held, the key question is whether the existence of the specific information sought has already been disclosed. *See, e.g., Am. C.L. Union*, 710 F.3d at 427. Consider *Afshar v. Dep't of State*, in which a plaintiff requested information about the supposed relationship between SAVAK, a foreign intelligence organization, and the CIA. *Afshar*, 702 F.2d at 1133. The plaintiff pointed to several books written by former

7

CIA officials and agents that, plaintiff alleged, constituted official acknowledgments. *Id.* at 1133–34. The D.C. Circuit rejected that argument, in part, because the books provided "only the most general outline or suggestion of a CIA–SAVAK relationship," but the plaintiff was seeking "a far more precise idea of the extent to which the services relied upon each other." *Id.* at 1133. Thus, the information in the books did not satisfy the requirement that the information requested had been "*specifically* revealed to the public." *Id*. at 1133–34 (quoting *Lamont v. Dep't of Just.*, 475 F. Supp. 761, 772 (S.D.N.Y. 1979)).

Similarly, Judicial Watch's official acknowledgment argument fails because the cited materials do not specifically acknowledge that the FBI has communicated with financial institutions to obtain any financial records. The statements reference financial documents, but do not state that the FBI obtained them through communications with financial institutions. *See* Def.'s Sur-Reply 3. The statements only establish that the agent reviewed financial records related to the case. *See id.* at 3–4. Those financial records could have been obtained by any number of law enforcement agencies and later reviewed by the FBI agent. The statements, by themselves, do not establish that there are "records of FBI communications seeking financial transaction records," *see* Seidel Decl. ¶ 11, much less communications about financial transaction records as part of a January 6 investigation. Because the statements fail to specifically acknowledge the existence of the records sought by Judicial Watch, they cannot pierce Glomar. *See Am. C.L. Union*, 710 F.3d at 427.

Judicial Watch's final argument is that the government's response to a prior set of FOIA requests by Dan Heily establishes an official acknowledgment.

Mr. Heily sent the FBI the following four requests:

- FOIA Request 1: Please provide all Federal Register data required by 5 U.S.C. § 552a (e)(4) for every system of

8

- records that you [FBI] use to store data from the firms that you [FBI] requested financial data from during the period December 5, 2020 through February 6, 2021.

- FOIA Request 2: Please provide all Federal Register notices required by 5 U.S.C. § 552a (e)(4) for every system of records that you [FBI] use to store data from cell phone providers that you [FBI] requested data from the period January 1, 2021 through January 31, 2021 for data near the Nations [sic] Capital.

- FOIA Request 3: Please provide the forms you [FBI] issued to each financial institution to obtain financial data during the period December 5, 2020 through February 6, 2021.

- FOIA Request 4: Please provide the forms you [FBI] issued to obtain data from cell phone providers in January 2021 for data in the area around the Nations Capital. I assume that you [FBI] requested name, address, phone number, texts, emails, GPS data and pen register data.

Heily Decl. 4–5, ECF No. 15-4. The government did not issue a Glomar response. Rather, it confirmed the existence of these records and asserted that they were exempt from disclosure under FOIA Exemptions (b)(7)(A) and 7(E). *Id.* at 7.

Judicial Watch must show that the government's prior disclosure to Mr. Heily "necessarily matches both the information at issue—the existence of records—and the specific request for that information." *Wolf*, 473 F.3d at 379. Yet, Mr. Heily's request encompassed financial information that could cover many investigations. The FBI's response thus constitutes an acknowledgment that it has responsive records for *some* investigation or investigations between December 5, 2020 and February 6, 2021. However, Judicial Watch requested information on the FBI's alleged collection of financial transaction records for an *investigation into January 6. See* Seidel Decl. ¶ 11; Pl.'s Opp'n 9; Pl.'s Reply 4. This scope differs from Mr. Heily's requests, which were not tailored to any specific investigation. Nor does Mr. Heily's requested multi-month time period directly align with Judicial Watch's request for communications concerning purchases made on "January 5, 2021

9

and/or January 6, 2021." Pl.'s Compl. ¶ 5. Therefore, the response to Mr. Heily's request does not necessarily or specifically acknowledge that there are responsive records for Judicial Watch's FOIA request. It acknowledges only that some number of records exist that relate to financial data obtained for some investigation or investigations between December 5, 2020 and February 6, 2021.

* * *

Judicial Watch has not demonstrated that the Mail Online's news article, FBI agents' statements in several January 6 cases, nor FBI's response to Dan Heily's FOIA request constitute official acknowledgments of the existence of records responsive to Judicial Watch's request. Accordingly, it cannot rely on the official acknowledgment exception.

### B. The FBI Properly Invoked FOIA Exemption 7(E)

Because the official acknowledgment exception does not apply, the propriety of the DOJ's Glomar response turns on whether its use of Exemption 7(E) is justified.

Exemption 7(E) exempts disclosure of information "compiled for law enforcement purposes" when doing so "would [1] disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Its purpose "is to prevent publication of information that would 'train potential violators to evade the law or instruct them how to break the law,' and to protect information that, if disclosed, 'increases the risks that a law will be violated or that past violators will escape legal consequences.'" *Elec. Priv. Info. Ctr. v. D.E.A.*, 192 F. Supp. 3d 92, 112 (D.D.C. 2016) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

"Exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*,

646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown,* 562 F.3d at 1194). This is a "relatively low bar." *Id.* Furthermore, Exemption 7(E) applies to both known and unknown techniques and procedures, so long as disclosure of known techniques "might reduce their effectiveness." *Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013) (citing *Coleman v. F.B.I.*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998)).

The DOJ has met Exemption 7(E)'s requirements here. It asserts that disclosing these records "would enable investigative subjects to circumvent similar and currently used techniques." Seidel Decl. ¶¶ 22–23. Furthermore, it asserts a specific danger to its investigation of January 6, since disclosure of the existence of responsive documents would either enable "compensating measures" or, if the FBI acknowledged that there are no records, would show a gap in the investigative process. Seidel Decl. ¶¶ 20–21.

Judicial Watch confronts the DOJ's position on two grounds: (1) that the FBI's use of financial records is commonly known and thus the DOJ's asserted harm is not substantiated; and (2) that the FBI's activities, if they exist, were improper and thus cannot be exempted. Pl.'s Opp'n 5–8. The Court is unpersuaded by Judicial Watch's avenues of attack.[2]

Judicial Watch's first argument is that the DOJ cannot use a Glomar response based on Exemption 7(E) because it is publicly known that the FBI uses financial records for investigations. *See* Pl.'s Opp'n 5–6.[3] Thus, Judicial Watch asserts that there is no logical risk of circumvention,

---

[2] As an initial matter, it is clear that, if responsive records exist, they were compiled for a law enforcement purpose. In *Blackwell*, the D.C. Circuit explained that the government "need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell*, 646 F.3d at 40 (quoting *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)). The Circuit concluded that the documents there qualified as records compiled for law enforcement because they were generated while investigating and prosecuting Blackwell on insider trading charges. *Id.* at 41. Similarly, the possible documents sought in this case easily have a rational nexus to the January 6 incident and any cases flowing from the investigation.

[3] Judicial Watch's argument that Exemption 7(E) fundamentally requires the technique to be "secret" clearly fails as such a requirement does not exist in the relevant case law. *See, e.g.*, *Shapiro v. Dep't of Just.*, 893 F.3d 796, 800–01 (D.C. Cir. 2018) (reasoning that even if it is commonly known that the FBI uses a specific database, Exemption 7(E)

11

nor a plausible basis by which disclosure would reduce the effectiveness of the technique. The DOJ concedes that its January 6 investigation is common knowledge. *See* Seidel Decl. ¶ 4. It also concedes that it is commonly known that "the FBI might seek financial transaction records as part of a criminal investigation." Def.'s Mem. 7. However, public awareness that the FBI sometimes uses financial records as an investigative technique is not the same as public awareness about whether and how the technique is being used in a specific investigation. *See BuzzFeed, Inc. v. Dep't of Just.*, 344 F. Supp. 3d 396, 407 (D.D.C. 2018) (holding that even though aerial surveillance by the FBI was commonly known, the FBI properly invoked Exemption 7(E) to avoid confirming the existence of responsive records for specified aircraft and flight plans); *cf. Wilner v. N.S.A.*, 592 F.3d 60, 70 (2d Cir. 2009) ("The fact that the public is aware of [a] program's existence does not mean that the public is entitled to have information regarding the operation of the program, its targets, [or] the information it has yielded. . . .").

The FBI's declaration "demonstrate[s] logically" why confirming the existence of the responsive records poses a risk of circumvention of the law. *See Blackwell*, 646 F.3d at 42. The DOJ has explained that acknowledging whether it sought financial records to identify those who participated in January 6 would afford future defendants an opportunity to evade the law. Seidel Decl. ¶¶ 21–22. Even if a defendant knows that the FBI could generally seek financial information for its investigations, no confirmation one way or the other has been made for the January 6 investigation. *See supra* Part III.A. An acknowledgment in either direction would give insight into how the FBI investigates matters like this one, *id.* at ¶ 21, and specifically reveal how it has chosen to identify subjects for its January 6 investigation, *id.* at ¶¶ 20–22.

---

may still bar disclosure of the methods used to search the database which would "reveal information to criminals regarding the 'scope, capabilities, and vulnerabilities' of [the FBI's] investigations").

Thus, the DOJ has met the threshold for showing a logical risk of circumvention of the law, the "relatively low bar" for withholding under Exemption 7(E). *See Blackwell*, 646 F.3d at 42. The risk plausibly exists for future wrongdoers who, through disclosure of these records, would learn about how the FBI obtains, or does not obtain, financial transaction information in investigations like this one. And it also plausibly exists for individual subjects in the January 6 investigation, who would be motivated by the FBI's answer to employ "compensating measures." *See* Seidel Decl. ¶ 21. Both hazards suggest that disclosure would reduce the effectiveness of the FBI's techniques for this and future investigations. *See Light*, 968 F. Supp. 2d at 29.

Judicial Watch's second argument is a bold contention: that the FBI has engaged in improper behavior sufficient to deny use of Exemption 7(E). Pl.'s Opp'n 6–8. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, [means that] courts presume that [public officers] have properly discharged their official duties." *See Latif v. Obama*, 666 F.3d 746, 748 (D.C. Cir. 2011) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). In the FOIA context, courts must "accord[] a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Here, Judicial Watch's speculation is not necessarily about the existence of documents, but rather the official acts that might have led to the creation of records. Specifically, Judicial Watch avers that the FBI could have acted improperly if it had communicated with companies seeking financial information.

Judicial Watch gives scant evidence for this argument. It cites an opinion piece on the Fox News website along with (what appears to be) the public-comment section for the article. ECF No.

15-1. There are several assertions of fact in the piece, centered around the statement that the author has

> exclusively obtained evidence that Bank of America, the second largest bank in the country with more than 60 million customers, is actively but secretly engaged in the hunt for extremists in cooperation with the government. Bank of America is, without the knowledge or the consent of its customers, sharing private information with federal law enforcement agencies.

*Id.* The article does not provide any detail about this claim's source, nor does Judicial Watch provide any underlying evidence. The second piece of evidence, the Mail Online article, appears to be based solely on the claims made in the Fox News opinion piece. ECF No. 15-2. Its third piece of evidence, Kevin Brock's declaration, offers opinions and conclusions based on the assumption that Judicial Watch's allegations are true, but offers no personal knowledge regarding the veracity of the allegations. *See* ECF No. 15-3. Therefore, the only factual support that Judicial Watch brings for its assertion of improper conduct comes from the opinion piece. But that article, with unclear sourcing, cannot overcome the presumption of good faith and regularity.[4] Furthermore, neither of Judicial Watch's articles even confirm that, if the sourcing were true, the FBI made the relevant communications as opposed to a different law enforcement agency. *See* Def.'s Reply 10. Accordingly, Judicial Watch's speculative allegations of impropriety do nothing to overcome the Glomar response. *Cf. Wilner*, 592 F.3d at 75 ("We cannot base our judgment on mere speculation that the [agency] was attempting to conceal the purported illegality of the [program] by providing a *Glomar* response to plaintiffs' requests. A finding of bad faith must be grounded in evidence suggesting bad faith on the part of the [agency]." (internal quotation marks omitted) (quoting *Larson*, 565 F.3d at 862)).

---

[4] Because Judicial Watch's evidence is insufficient on its face, the Court does not reach the issue of whether it is even proper to consider possible impropriety underlying a Glomar response under Exemption 7(E). *See* Pl.'s Opp'n 6–7; Def.'s Reply 7.

Accordingly, this Court finds that the Glomar response was justified under FOIA Exemption 7(E).

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the DOJ's motion for summary judgment and **DENY** Judicial Watch's cross-motion for summary judgment by separate order.

Date: July 20, 2022

Royce C. Lamberth
Unites States District Judge